In the Matter of JOHN I. O'DAY, Respondent, against CHARLES T. YEAGER, as Surrogate of Erie County, Appellant, and ROBERT W. MCNULTY, Intervenor-Appellant.

Argued March 9, 1955; decided June 9, 1955.

*Elmer R. Weil, County Attorney* (*Wortley B. Paul* of counsel), for Charles T. Yeager, Surrogate of Erie County, appellant. I. If the position of clerk of the Surrogate's Court of Erie County is merely a subordinate one, and the clerk is, as the Appellate Division has indicated in its *Per Curiam* opinion, merely a " subordinate employee ", then there was no authority to fill such position without a competitive examination; and since petitioner has never taken such a competitive examination, he has never been legally appointed and employed and, therefore, he cannot be restored to a position which he never legally held. (*Matter of Friedman* v. *Finegan*, 268 N. Y. 93; *Chittenden* v. *Wurster*, 152 N. Y. 345; *Matter of Neary* v. *O'Connor*, 173 Misc. 696, 260 App. Div. 986; *Matter of Rooney* v. *Rice*, 274 N. Y. 347; *People ex rel. Murphy* v. *Prendergast*, 165 App. Div. 186, 214 N. Y. 664; *People ex rel. Wren* v. *Goetting*, 55 Hun 611, opinion in 8 N. Y. S. 742, 133 N. Y. 569; *Matter of Volgenau* v. *Finegan*, 163 Misc. 554, 250 App. Div. 757; *Matter of O'Keefe* v. *Clark*, 238 App. Div. 175; *People ex rel. Crummey* v. *Palmer*, 152 N. Y. 217; *Matter of Meenagh* v. *Dewey*, 286 N. Y. 292.) II. If the determination made by the Appellate Division herein is right, subdivision 3 of section 13 of the Civil Service Law, under which petitioner was appointed, is unconstitutional because it violates section 6 of article V of the Constitution in placing in an exempt position, without examination, a person

who, if he is a mere subordinate clerk or employee, must be selected by competitive examination, since an examination for such a position is, on its face, practicable under that court's reasoning. Petitioner has therefore never been legally appointed to, nor has he ever legally held, the position of clerk of the Surrogate's Court of Erie County. (*Hale* v. *Worstell*, 185 N. Y. 247; *Matter of Andresen* v. *Rice*, 277 N. Y. 271; *Matter of Ottinger* v. *State Civil Service Comm.*, 240 N. Y. 435.) III. Since the position involved is " Clerk of the Surrogate's Court " which is in the exempt class of the civil service, pursuant to subdivision 3 of section 13 of the Civil Service Law, a detailed discussion of what powers and duties the Surrogate's Court Act and other statutes give to such position is unnecessary. The very law itself by creating the exemption makes the position one of such trust, confidence and responsibility that it is not a mere subordinate position. (*Matter of Friedman* v. *Finegan*, 268 N. Y. 93; *People ex rel. Ryan* v. *Wells*, 176 N. Y. 462; *Matter of Glassman* v. *Fries*, 271 N. Y. 116.) IV. The duties of the position of clerk of the Surrogate's Court in Erie County inherently involve a confidential relationship with the surrogate and the exercise of the highest duties of trust, confidence and responsibility as well as the delegation of some sovereign power. (*Chittenden* v. *Wurster*, 152 N. Y. 345; *Matter of Neary* v. *O'Connor*, 175 Misc. 696, 260 App. Div. 986; *People ex rel. Corkill* v. *McAdoo*, 113 App. Div. 770; *People ex rel. Earl* v. *England*, 16 App. Div. 97; *People ex rel. Murphy* v. *Prendergast*, 165 App. Div. 186; *People ex rel. Wren* v. *Goetting*, 55 Hun 611, opinion in 8 N. Y. S. 742, 133 N. Y. 569; *People ex rel. Jacobus* v. *Van Wyck*, 157 N. Y. 495; *People ex rel. Hoefle* v. *Cahill*, 188 N. Y. 489; *Matter of Byrnes* v. *Windels*, 265 N. Y. 403; *People ex rel. Corkhill* v. *McAdoo*, 98 App. Div. 312; *Matter of Pinkus* v. *Village of Hempstead*, 294 N. Y. 719; *Matter of Mylod* v. *Graves*, 274 N. Y. 381; *Matter of Smith* v. *Board of Stadium & Memorial Auditorium of Buffalo*, 197 Misc. 529; *Matter of Huber* v. *Stephan*, 156 Misc. 131.) V. As to a part of his duties, the clerk of the Surrogate's Court of Erie County was a " deputy " within the meaning and intent of subdivision 1 of section 22 of the Civil Service Law. (*Olmsted* v. *Meahl*, 219 N. Y. 270; *Matter of Smith* v. *Stadium & Memorial Auditorium*

*of Buffalo,* 197 Misc. 529; *Matter of Cappon* v. *Cleere,* 177 Misc. 1027; *Matter of Byrnes* v. *Windels,* 265 N. Y. 403; *Matter of Mylod* v. *Graves,* 274 N. Y. 381; *People ex rel. Hoefle* v. *Cahill,* 188 N. Y. 489.) VI. The decision of the Supreme Court at Special Term in the case of *Matter of Cappon* v. *Cleere* (177 Misc. 1027) is not an authority adverse to the determination made in the case at bar. (*People ex rel. Hoefle* v. *Cahill,* 188 N. Y. 489; *Matter of Seeley* v. *Stevens,* 190 N. Y. 158; *Matter of Fornara* v. *Schroeder,* 261 N. Y. 363; *Matter of Byrnes* v. *Windels,* 265 N. Y. 403; *Matter of Mylod* v. *Graves,* 274 N. Y. 381.)

*Michael Catalano* for intervenor-appellant. I. A surrogate may remove at pleasure a clerk of the Surrogate's Court. II. The clerk of the Surrogate's Court of the County of Erie is a deputy within the meaning of section 22 of the Civil Service Law and, therefore, may be removed at the pleasure of the surrogate. III. The clerk of the Surrogate's Court of the County of Erie may be removed at the pleasure of the surrogate, whether or not such clerk be a veteran or a volunteer fireman. (*Matter of Rohr* v. *Kenngott,* 288 N. Y. 97; *Matter of Smith* v. *Conway,* 198 Misc. 886, 278 App. Div. 566; *Matter of Glassman* v. *Fries,* 271 N. Y. 116; *Matter of Neary* v. *O'Connor,* 173 Misc. 696, 260 App. Div. 986; *Matter of Byrnes* v. *Windels,* 265 N. Y. 403; *Matter of Friedman* v. *Finegan,* 268 N. Y. 93; *Matter of Smith* v. *Board of Stadium & Memorial Auditorium of Buffalo,* 197 Misc. 529; *Heath* v. *Creagh,* 197 Misc. 537, 276 App. Div. 948; *Matter of Cappon* v. *Cleere,* 177 Misc. 1027.) IV. The Surrogate of Erie County may properly have a deputy in the person of a clerk. V. The Surrogate of Erie County and his clerk have concurrent powers.

*John I. O'Day,* respondent in person. I. The clerk of the Surrogate's Court is not an " independent officer ", but is, in all things, a subordinate of the surrogate. (*People ex rel. Jacobus* v. *Van Wyck,* 157 N. Y. 495; *Matter of Mylod* v. *Graves,* 274 N. Y. 381; *Matter of Christey* v. *Cochrane,* 211 N. Y. 333; *People ex rel. Ray* v. *Henry,* 47 App. Div. 133; *People ex rel. Fallon* v. *Wright,* 150 N. Y. 444; *Matter of Mafera* v. *Pasta,* 265 N. Y. 552; *Matter of Kiernan* v. *Ingersoll,* 265 N. Y. 553; *Matter of Fornara* v. *Schroeder,* 261 N. Y. 363; *Matter of Morris*

v. *Neider,* 259 App. Div. 49; *Matter of Dickinson* v. *Monroe,* 180 Misc. 714; *Matter of Mercer* v. *Dowd,* 288 N. Y. 381; *Matter of Cappon* v. *Cleere,* 177 Misc. 1027.) II. The clerk of the Surrogate's Court is neither " private secretary, cashier or deputy ". (*Matter of Smith* v. *Conway,* 198 Misc. 886, 278 App. Div. 566, 302 N. Y. 951; *Matter of Mylod* v. *Graves,* 274 N. Y. 387; *Matter of Byrnes* v. *Windels,* 265 N. Y. 403; *Heath* v. *Creagh,* 276 App. Div. 948; *Matter of Mafera* v. *Pasta,* 265 N. Y. 552; *Matter of MacMaster* v. *Harvey,* 265 N. Y. 555; *Matter of Kiernan* v. *Ingersoll,* 265 N. Y. 553; *Matter of Mercer* v. *Dowd,* 263 App. Div. 932, 288 N. Y. 381; *Matter of Steen* v. *County of Nassau,* 179 Misc. 821, 265 App. Div. 858; *Matter of Petrillo* v. *Lynn,* 243 App. Div. 796, 268 N. Y. 673; *Roderigas* v. *East Riv. Sav. Inst.,* 76 N. Y. 316; *Marc* v. *Pinkard,* 133 Misc. 83.) III. The fact that a position is protected by section 22 of the Civil Service Law does not indicate that it is improperly classified as " exempt ". (*Matter of Fornara* v. *Schroeder,* 261 N. Y. 363; *Matter of Mylod* v. *Graves,* 274 N. Y. 381; *Matter of Byrnes* v. *Windels,* 265 N. Y. 403.) IV. The power of appointment and removal of clerks, granted to the surrogate by section 21 of the Surrogate's Court Act, is subject to the provisions of the Civil Service Law. (*People ex rel. McKeon* v. *Ludwig,* 215 N. Y. 389; *Matter of Kiernan* v. *Ingersoll,* 242 App. Div. 658, 265 N. Y. 553.)

FULD, J. On January 1, 1950, petitioner, an honorably discharged veteran of World War II, was appointed clerk of the Surrogate's Court of Erie County by Surrogate BUSCAGLIA at a salary of $9,200 a year. Following gubernatorial appointment of CHARLES T. YEAGER as surrogate to fill the vacancy that had occurred in that office, petitioner's appointment was revoked, pursuant to section 21 of the Surrogate's Court Act, by the new surrogate on December 31, 1953. In this article 78 proceeding, brought to effect his reinstatement, petitioner, claiming the protection accorded veterans by section 22 of the Civil Service Law, alleges that his removal was illegal and void for noncompliance with its provisions.

It is section 21 of the Surrogate's Court Act which provides both for the appointment and discharge of the clerk; it reads, in part, as follows: " By a written order filed and recorded in

his office, which he may in like manner revoke at pleasure, a surrogate may appoint a clerk of the surrogate's court ".[1] The fact that the surrogate is given the power to remove " at pleasure " does not render section 22 of the Civil Service Law inapplicable or prevent the veteran from asserting his rights under that section, if its coverage otherwise extends to him. (See *Matter of Mercer* v. *Dowd,* 288 N. Y. 381, 384; *Matter of Bennett* v. *Robbins,* 240 N. Y. 553; *Matter of Seeley* v. *Stevens,* 190 N. Y. 158, 165, 166; see, also, *Matter of Byrnes* v. *Windels,* 265 N. Y. 403; *People ex rel. Hoefle* v. *Cahill,* 188 N. Y. 489, 496.)

The Civil Service Law provision recites, in subdivision 1, that no person, " holding a position by appointment or employment " in the state or in the several counties or in any branch of the public service, who is an honorably discharged war veteran, " shall be removed from such position except for incompetency or misconduct shown after a hearing upon due notice upon stated charges ". The protection, however, does not extend to all veterans, for it is explicitly declared that " Nothing in this subdivision shall be construed to apply to the position of private secretary, cashier or deputy of any official or department." The courts have held that section 22 " was intended to apply only to those holding positions of a subordinate nature," and, consequently, to the list of persons specifically excluded from the protective coverage of the statute must be added those who are officials filling independent positions. (*Matter of Mylod* v. *Graves,* 274 N. Y. 381, 384; see, also, *People ex rel. Jacobus* v. *Van Wyck,* 157 N. Y. 495, 504.)

The court at Special Term dismissed the petition upon the ground, among others, that the petitioner is an independent officer, to whom specific " duties were granted " by statute. The Appellate Division reversed, directing that petitioner have the relief sought; it was that court's conclusion that the clerk is a " subordinate employee," always subject, in the exercise of his

1. The section also empowers the surrogate of Erie County to appoint a deputy clerk and, in addition, provides that " Each surrogate may appoint, and at pleasure remove, as many other clerks for his office, to be paid by the county, as the board of supervisors of his county authorize him so to appoint. • • • A surrogate may appoint, and at pleasure remove, as many additional clerks to be paid by him as he thinks proper." In passing, it should be noted that, during petitioner's term of office, he was in charge, and supervised the work. of a staff of some twenty-five employees.

powers and duties, to the approval and direction of the surrogate.

Whether a particular person is an independent officer or a subordinate employee "is not always an easy matter to determine." (*Matter of Mylod* v. *Graves, supra,* 274 N. Y. 381, 387.) No automatic rule, no definitive signpost, is at hand, for it may fairly be said that each case must be decided upon its own facts. (Compare, e.g., *Matter of Mercer* v. *Dowd, supra,* 288 N. Y. 381, with *Matter of Pinkus* v. *Village of Hempstead,* 294 N. Y. 719; see, also, *Matter of Bergerman* v. *Byrnes,* 305 N. Y. 811; *Matter of Mafera* v. *Pasta,* 265 N. Y. 552.) The decisions do, however, contain certain guides and, if we were to attempt a formulization, it would be this — he is an independent officer whose position is created, and whose powers and duties are prescribed, by statute and who exercises a high degree of initiative and independent judgment. (See *Matter of Mylod* v. *Graves, supra,* 274 N. Y. 381; *Matter of Christey* v. *Cochrane,* 211 N. Y. 333; *People ex rel. Jacobus* v. *Van Wyck, supra,* 157 N. Y. 495; see, also, *Matter of Bergerman* v. *Byrnes, supra,* 305 N. Y. 811.)

With that in mind, we turn to the Surrogate's Court Act, from which the clerk of the court derives his authority to function, his powers and his duties. As already stated, it is section 21 of that statute which creates the office, providing that it shall be filled by appointment by the surrogate. And it is section 32 which prescribes most of the clerk's powers, to be exercised by him, it is worthy of note, "concurrently with the surrogate". Thus, he may "certify and sign * * * any of the records of the court" (§ 32, subd. 1), including records and papers "left uncompleted or unsigned" by another surrogate (§ 20, subd. 9).[2] He may "issue any citation, subpoena or other mandate to which a party is entitled as of course, either unconditionally or on the filing of any paper" (§ 32, subd. 2). He may "adjourn" for a period not to exceed thirty days "any matter, when the surrogate is absent from his office, or unable * * * to attend to the same" (§ 32, subd. 4), and he may "charge and receive" certain specified fees "to the use of the county" (§ 29). The

2. When read in conjunction with subdivision 1 of section 32, subdivision 9 of section 20 confers not only upon the surrogate, but upon the clerk too, power to complete as well as certify and sign all records and papers not completed by a predecessor of the sitting surrogate.

existence of powers such as these was stressed by Judge CULLEN — later Chief Judge of the Court of Appeals — as demonstrating that the clerk of another court, a district police court, was an independent officer. (See *People ex rel. Earl* v. *England,* 16 App. Div. 97, 100; *People ex rel. Wren* v. *Goetting,* 55 Hun 611, opinion in 8 N. Y. S. 742, affd. on other grounds, 133 N. Y. 569.)

Nor does this specification exhaust the powers conferred by the statute. Included among the clerk's most important functions, and they certainly are not the attributes of a mere subordinate employee, is the power " to take proof of a will " (§ 32, subd. 8) as well as the power " to take   *   *   *   and report the testimony in any proceeding " (§ 32, subd. 10). It is true that he may not pass upon the issues involved (§ 32, subd. 10) or take testimony bearing on proof of a will if demand is made for examination of subscribing witnesses or if objections to probate are pending (§ 32, subd. 8). But, when we consider the impressive number of wills probated in Erie County, it is clear that the duties of the clerk encompass a vast range of responsibility, since, quite obviously, the surrogate himself could not possibly investigate all of the wills filed and considered in his court. (See Surrogate's Ct. Act, § 144.)

No less significant is the further power of the clerk to " authorize or deputize " other clerks, with the surrogate's approval, " to sign his name, and exercise such of the other powers conferred upon him by   *   *   *   [section 32], as he shall designate " (§ 32, subd. 6). And, although the surrogate may prohibit the clerk from exercising any of those powers, the statute specifically announces, " the prohibition does not affect the validity of any act of the clerk or deputy clerk done in disregard of the prohibition." Not only does this particular provision, subdivision 6, furnish legislative confirmation of the broad authority and extensive discretion vested in the clerk, but the statute, taken as a whole, manifests the heavy responsibility granted to him and the high confidence reposed in him, and goes far toward marking him as the one who has charge of the administrative work and machinery of the court. (See, also, Surrogate's Ct. Act, §§ 31, 33.)

Petitioner attempts to minimize the importance of the powers thus assigned to the clerk by urging that they are all subject to the supervision and control of the surrogate. However, **even**

though it is undoubtedly true that the surrogate has the final say in matters calling for a judicial decision, it is equally plain that the statute itself authorizes the clerk to perform many vital tasks on his own responsibility, not subject to the surrogate's direction and, indeed, even in his absence.

As a matter of fact, one's status as an independent officer is not affected because some of the duties entrusted to him may be "more or less ministerial and clerical." (*Matter of Mylod* v. *Graves, supra,* 274 N. Y. 381, 387.) It is only necessary that he exercise "some portion of the sovereign power, whether great or small." (*People ex rel. Hoefle* v. *Cahill, supra,* 188 N. Y. 489, 494.) Moreover, the power of review which the surrogate has over some of the clerk's actions does not in and of itself render him a subordinate employee. Many who have been denominated independent officers have been subject to some such control (see *Matter of Mylod* v. *Graves, supra,* 274 N. Y. 381; *Matter of Christey* v. *Cochrane, supra,* 211 N. Y. 333; *People ex rel. Jacobus* v. *Van Wyck, supra,* 157 N. Y. 495; cf. *Matter of Bergerman* v. *Byrnes, supra,* 305 N. Y. 811); in *Mylod,* for instance, the determinations made by the tax appraiser for Dutchess County were subject to review and modification by the surrogate; in *Jacobus,* the decisions of the assessors of the City of New York were subject to correction by the board of revision; and, in *Matter of Bergerman,* the duties of the commissioner of records of the City Court of the City of New York — consisting almost entirely of the keeping of records — were to be "performed under such conditions and regulations as may be approved by the presiding justice" (Judiciary Law, § 177, subd. 2), and yet that fact was held not to alter the commissioner's status as a "principal executive officer" within the meaning of subdivision 1 of section 13 of the Civil Service Law.

As solicitous as the courts have ever been on behalf of the veteran in civil service, we find it impossible to conclude that the clerk of a court, whose position, powers and duties stem from statute and who functions in a tribunal as busy and important as that of the Surrogate's Court of Erie County, may be stamped a subordinate employee, so as to entitle him to the protection of section 22 of the Civil Service Law. Petitioner's removal from office was not, therefore, regulated or controlled by the provisions of that statute.

The order of the Appellate Division should be reversed and that of Special Term reinstated, without costs.

Dye, J. (dissenting). I dissent and vote to affirm. I am unable to agree with the holding of the majority that petitioner, as clerk of the Surrogate's Court of Erie County, was an *"independent officer"* rather than a *"subordinate employee"* and that, consequently, he is excluded from the protection from removal without charges or a hearing afforded to veterans in subordinate positions (Civil Service Law, § 22; *Matter of Mylod v. Graves,* 274 N. Y. 381; *People ex rel. Jacobus v. Van Wyck,* 157 N. Y. 495; *People ex rel. Fonda v. Morton,* 148 N. Y. 156).

We are all in agreement that if we were to decide that the post in question is a subordinate position rather than an independent office, petitioner would be entitled to reinstatement. We are also in agreement that the marks or tests which distinguish an excluded *independent officer* from a covered employee are: (1) that he exercise some portion of the sovereign power (*People ex rel. Hoefle v. Cahill,* 188 N. Y. 489); and (2) that his office and his duties be prescribed by statute and that in the performance of his major duties he be not subject to the direction and control of a superior officer or, stated affirmatively, that he be subject only to such directions as the statute gives (*Matter of Mylod v. Graves, supra,* 274 N. Y. 381, 384; *People ex rel. Jacobus v. Van Wyck, supra,* 157 N. Y. 495). It matters not how important and responsible his duties be nor how much trust and confidence is placed in him, he is not an *independent officer* within the meaning of our decisions if he does not exercise some portion of the sovereign power *or* if he is subject to the direction and control of a superior officer. The mere statement of these well-grounded principles should be sufficient to refute the proposition that the usual clerk of a court is an independent officer (cf. *Matter of Cappon v. Cleere,* 177 Misc. 1027).

I now turn to the sections of the Surrogate's Court Act which the majority point to as conferring upon this petitioner the status of an independent officer. As I read the statutes the contrary is manifest for nowhere is the petitioner authorized to exercise any of the surrogate's powers of sovereignty and in every definition of power it is clear that he is subject to the direction and control of the surrogate at all times.

Section 33 requires the clerk of the Surrogate's Court to keep a book and make entries in it — purely ministerial acts. Section 31 requires the parties to pay the travel and other expenses incurred in holding hearings away from the surrogate's regular quarters.

Section 29 imposes a duty upon the clerk to collect fixed fees for the county for specified services. An examination of the details of this section discloses that there is left in the clerk no more discretion and independent judgment than there is in a parking meter. He is merely the name of the pipe through which the fees are channeled.

Section 32 defines the grant of power to the clerk and since main reliance is had on this section for the holding of the majority, that section must be carefully examined having in mind the realities of the everyday business of a busy Surrogate's Court. Powers are conferred upon the clerk and the deputy clerk of the Surrogate's Court of Erie County in 9 of the 11 subdivisions of section 32 and, it should be noted at the outset that the first paragraph of this section reads: '' The clerk and the deputy clerk of the surrogate's court may severally exercise, concurrently with the surrogate, the following *powers of the surrogate* ''.

Under subdivision 1 the clerk may *certify* and *sign* any records of the court including all records or papers which a surrogate completed after having found them left uncompleted by his predecessor. By no reasonable interpretation of the language of subdivision 1 of section 32 and subdivision 9 of section 20 when read together can it be fairly said that power is conferred on the clerk to complete a record or paper left incomplete by a former surrogate. The clerk is authorized only to *certify* and *sign*. The power is the usual power given to a clerk of a court to sign a paper as clerk evidencing some action of the court and in so doing the clerk is acting merely as a scrivener. The clerk of the Court of Appeals certifies and signs all of the judgments of this court.

Under subdivision 2 the clerk is empowered to issue any citation, subpœna or other mandate to which a party is entitled as of course and he may sign as clerk and affix the seal of the court to any letters or mandates issued from this court. Since

the only mandate the clerk is empowered to issue is one to which a party is entitled *as of course* and the only letters or mandates he may sign and seal as clerk are those otherwise *properly issued* by the court, none, other than a ministerial power, is here conferred.

Under subdivision 3 the clerk may certify in the manner prescribed by law a copy of any paper on file in the *surrogate's* office. In other words he may compare the copy with the original and in writing assure the world that it is a true and complete copy of the original on file.

Under subdivision 4 the clerk may, when the surrogate is absent or busy, adjourn any matter to a definite time not beyond thirty days. If the surrogate is absent or busy, the matters arising would adjourn themselves from day to day to the inconvenience of all concerned. Power is herein granted to the clerk merely to convey to the parties an assurance that, without fear of default, they need not again attend until a day certain within the thirty days specified. This cannot be the exercise of sovereignty.

Under subdivision 5 the clerk is authorized to perform the functions of a notary public, but, outside Erie County and within the State, only if the Surrogate's Court of Erie County has jurisdiction of the proceeding in which the oath is taken.

Under subdivision 6 the clerk may with the approval of the surrogate authorize one or more of the *other clerks* employed in the surrogate's office to exercise any of the powers given to the clerk in this section. If the clerk is given no independent authority otherwise by this section, then, of course, the power to delegate his ministerial powers cannot make him an independent officer. The validating provision is merely the usual device to prevent reopenings etc., on technical grounds similar to those applying to notaries public.

Subdivision 7 confers no powers and subdivision 9 does not apply in Erie County.

Under subdivision 8 the clerk, deputy clerk and others designated by the surrogate are empowered to take proof of an uncontested will. In plain words, this means that the clerk or practically anyone else employed in the surrogate's office may, where there is no contest, take the oath of the subscribing wit-

nesses to a will when they sign and swear to a statement on a printed blank describing the execution of the will. The surrogate complies with section 144 of the Surrogate's Court Act by designing a printed form with blanks to be filled in to elicit from the witnesses such information as he deems essential to prove a will where there is no objection or contest and no request to cross-examine the witnesses. The clerk does not become more of an independent officer whether he takes a few such oaths or many.

Under subdivision 10 the surrogate is empowered to *direct* the clerk and others to take under oath and report the testimony in any proceeding *but* without authority to pass on any of the issues. In *Matter of Feit* (278 App. Div. 944) and in *Matter of Nowakowski* (284 App. Div. 655), the Appellate Divisions have had occasion to examine the scope of the power conferred by this subdivision. In the latter case the Appellate Division said (pp. 656–657): '' The surrogate is a judicial officer of a constitutional court. (N. Y. Const., art. VI, § 13.) We know of no authority by which the surrogate may confer his judicial powers to hear, try and determine upon some appointed clerk in his office. * * * It is a basic duty of a judge, including surrogates, to see and hear all witnesses upon the trial of contested actions or proceedings. The abrogation of such duty is in conflict with the constitutional oath of office which each is required to take.''

If more than the ministerial powers to swear the witnesses and, a stenographer being present, to supervise the orderly questioning of witnesses by counsel in routine matters was intended, I think it is clear that the excess is unconstitutional.

Under subdivision 11 the surrogate is empowered to authorize the clerk and many others: (1) to sign the name of the surrogate to decrees in *uncontested* proceedings but only where the surrogate *has decided the matter by a filed written decision* and (2) to sign the surrogate's name to orders previously *granted by the surrogate* permitting safe-deposit boxes to be opened. Again, the clerk may put into writing what the court has authorized.

In summary, the statute says expressly that these enumerated powers are the powers of the surrogate and not independent

powers. The clerk usually has no statutory duties of his own but is given some of the minor and clerical duties of the surrogate and none of these permit him the slightest exercise of sovereign power. Our courts have been able to keep abreast of the complexities of today's society as well as they have because they have been able to delegate the routine, ministerial and mechanical portion of their work to subordinates — not as assistant judges but as clerks under the complete domination, direction and control of the courts. And in the instant case, that control and direction is not by way of judicial or administrative review but, rather, all of the power is in the surrogate and he directs and controls its exercise by his omnipresence. This is far different from review.

Next we should examine into the nonstatutory duties and powers of the clerk. In the present case the petitioner concededly directed the administrative processes of the everyday business of the surrogate's office as the clerks of all courts do. The word *clerk* itself comes from *cleric* a minor religious functionary who was educated to read and write at a time when not many of the lay citizenry were literate. His earliest functions were to make written minutes of the pronouncements of the courts and to make the same available in the form and at the time directed by the court. Even today, these are the basic functions of the clerk of the Surrogate's Court. In our populous cities, however, these basic and simple functions may be hidden by the embellishments of departmentalized staffs, under the immediate supervision and apparent administrative direction of the clerk. In this supervision the clerk does exercise as stated in the majority opinion, " a high degree of initiative and independent judgment " and " broad authority and extensive discretion " and there is " heavy responsibility granted to him " and " high confidence reposed in him ". I would remind you again that these are not *statutory* powers and duties and statutory powers are essential to the status of an independent officer. The only discretion which the clerk can possibly exercise depends solely upon the authority given him by the surrogate. But more important the clerk is not the court executive, the one who initiates and directs, but at most can do only that which is required of him by the surrogate. That subordinate status was

intended is further borne out by the fact that prior to 1935 section 5 of the Surrogate's Court Act declared flatly that the surrogate was liable for any act of the clerk. That section has been repealed but none of the attributes of the relationship and none of the powers and duties of the petitioner have been changed. In such a state of the statute I cannot understand how this court may now say that the Legislature constituted the clerk the alter ego of the surrogate, or if you prefer, an independent officer.

As stated in the majority opinion, the rule is firmly established that each case must be decided upon its own facts. Reference to our prior decisions construing section 22 of the Civil Service Law in order to compare what positions we have held to be independent offices with those we have held to be subordinate employees would serve no useful purpose because we are all agreed that all of these cases stand four square for the proposition that a person cannot be excluded from the protection of the statute as an *independent officer* unless he exercises, pursuant to statute and without the direction or control of a superior officer, some portion of the sovereign power. It has been demonstrated, I think, that petitioner did not.

*Matter of Bergerman* v. *Byrnes* (305 N. Y. 811) is cited and strongly relied upon as persuasive authority for the holding that petitioner is an independent officer. In that case we had before us a proceeding brought to review a determination of the municipal civil service commission holding the commissioner of records of the City of New York to be a " principal executive officer " within the meaning of subdivision 1 of section 13 of the Civil Service Law. There the Civil Service Commission had found from the statutory creation of the position and description of its duties that the office was one requiring *independent judgment and discretion* and if reasonable minds might differ in making that determination, the courts were precluded from upsetting it. The petitioner here may even be, in civil service language, a " principal executive officer " insofar as his non-statutory duties are concerned but, for the reasons stated above, it would not follow that he is an *independent officer* in the case before us.

On this record we should not say that the status of this petitioner is that of an independent officer. The clear-cut distinction between the legal status of a subordinate employee and an independent officer is not a matter of expedience but represents the cumulative experience of many generations in dealing with government personnel. Fundamental as it is in our body politic that qualified veterans should not be whimsically removed from public service (Civil Service Law, § 22), it is equally important that the long-established concept of an independent officer should not be changed by judicial fiat in order to remove petitioner without charges and without a hearing.

The order appealed from should be affirmed, with costs, and the petitioner should be reinstated in his position and reimbursed for his back salary.

CONWAY, Ch. J., FROESSEL, VAN VOORHIS and BURKE, JJ., concur with FULD, J.; DYE, J., dissents in an opinion; DESMOND, J., taking no part.

Order reversed, etc.