In the Matter of LAURENCE F. DE LUCIA, Appellant, v LOUIS J. LEFKOWITZ, as Attorney-General of the State of New York, Respondent. (Proceeding No. 1.)

In the Matter of JOSEPH T. HOPKINS, Appellant, v LOUIS J. LEFKOWITZ, as Attorney-General of the State of New York, Respondent. (Proceeding No. 2.)

Third Department, June 15, 1978

## APPEARANCES OF COUNSEL

*Keniry & Keniry (William H. Keniry* of counsel), for appellants.

*Louis J. Lefkowitz, Attorney-General (Jean M. Coon* and *Ruth Kessler Toch* of counsel), respondent *pro se.*

## OPINION OF THE COURT

GREENBLOTT, J.

Petitioner Hopkins held the position of Assistant Attorney-General in charge of the Bureau of Claims and Litigation in the Department of Law. Petitioner De Lucia was the Assistant Attorney-General in charge of the Contracts Unit in the same bureau. On September 30, 1976, a New York County Grand Jury indicted Hopkins on charges of perjury and bribe receiving and indicted De Lucia on four counts of perjury arising out of testimony concerning State consulting contracts and construction claims. First by telephone and then by letter dated October 5, 1976, respondent advised petitioners that they were suspended without pay, pending resolution of the criminal charges.

Petitioners brought these article 78 proceedings, alleging violations of due process in that respondent had suspended them without notice, without hearing and without cause. They sought reinstatement and back pay. Special Term held that petitioners were not entitled to hearings prior to suspension since they had not established cognizable liberty or property interests in continued employment and had not established coverage under the hearing provisions of section 75 of the Civil Service Law. Petitioners appeal the consequent dismissal of their petitions.

This court recently reviewed the liberty and property interests that fall within the purview of the Fourteenth Amendment in *Matter of Petix v Connelie* (61 AD2d 65), relying primarily on the Supreme Court's analysis in *Board of Regents v Roth* (408 US 564) and *Bishop v Wood* (426 US 341). A complete review of that body of law is unnecessary here, particularly in view of Special Term's well-reasoned analysis.

It is clear that protected property interests include specific benefits to which an employee can establish his entitlement. These are created and defined by local laws, regulations and agreements. In the case before us, petitioners, as members of the exempt class of the civil service, do not hold their *positions* by right of entitlement but, rather, at the pleasure of the Attorney-General (Executive Law, § 62). This was made clear to petitioners upon their retention.

█ Petitioners also claim a protectible liberty interest, that being the right to work and contract free from the stigma attaching to their suspensions. Again we refer to *Petix, Roth* and *Bishop* in rejecting this argument. There has been no public disclosure of the reasons for suspension (see *Bishop v Wood, supra),* so that a direct case for deprivation of rights arising from the suspension cannot be made. Nor do the circumstances surrounding the suspensions give rise to a finding that petitioners' names have been injured *(Matter of Petix v Connelie, supra).* The fact that petitioners have been indicted is not challenged, and that would appear to be the sole reason for the suspensions. There is neither claim nor proof that respondent has commented on the charges in the indictments. The injury stems from the indictments, not the suspensions. Further, even if proper allegations of injury to reputation had been made, petitioners would still not be entitled to a hearing to determine the validity of the suspensions, but only to a hearing to clear their names *(Codd v Velger,* 429 US 624, 627). The opportunity to vindicate themselves will come in the criminal proceedings. The petitioner De Lucia has failed to establish any right to a hearing.

█ Petitioner Hopkins argues, his constitutional claims aside, that section 75 of the Civil Service Law provides for a hearing upon stated charges before he can be disciplined. Hopkins claims coverage under paragraph (b) of subdivision 1 as a veteran of the armed forces. However, the paragraph specifically excludes from coverage a "private secretary, cashier or deputy of any official or department". We must decide whether petitioner Hopkins is a deputy for, if he is not, he is entitled to protection under this section.

We reject Hopkins' argument that a deputy is only one properly designated to serve as deputy. The term, as used in section 75 of the Civil Service Law, may be broader in meaning than the term as used in subdivision 1 of section 41 of the Civil Service Law *(Matter of Behringer v Parisi,* 5 NY2d 147, 154; *Matter of Byrnes v Windels,* 265 NY 403, 405).

In *Byrnes,* the Court of Appeals decided a case virtually identical to the one at bar. There, an Assistant Corporation Counsel in the City of New York had claimed statutory entitlement to a hearing under the Civil Service Law since he was a veteran, but the Corporation Counsel argued he was excepted as a deputy. The court relied in the main on a provision of the City Charter which gave the Assistant Corpo-

ration Counsel the power to "perform all and every duty belonging to the office of the corporation counsel, or so much of such duties as the corporation counsel shall deem it necessary to delegate." The charter required delegation of these duties to be in writing. Notwithstanding the absence of written delegation, the court held these counsel to be deputies within the contemplation of the Civil Service Law.

The court explained further why Assistant Corporation Counsel must be considered deputies. "The necessity for this provision in the charter is quite apparent when we remember the duties devolving upon the Corporation Counsel of a great city like New York, and which must be delegated to other lawyers. He is the law officer of the city and must appear in courts to defend or prosecute the city's litigation. He cannot do this work himself. It is a physical impossibility to be done by one deputy. There must be numerous lawyers to handle this work, not merely for the Corporation Counsel, but for the city, and while doing it they act very largely upon their own responsibility. Such at least must be the case when appearing in court. Discretion also very largely rests with these assistant lawyers in the proper disposition of the case outside of court. Upon them rests as much responsibility in the individual cause submitted to them as upon the head of the department or an attorney representing a private client. Thus, the charter from necessity says that in addition to their other duties they 'possess every power and perform all and every duty belonging to the office of the corporation counsel, * * * whenever so empowered.' " *(Matter of Byrnes v Windels, supra,* pp 409-410.)

An examination of sections 62 and 63 of the Executive Law as well as the nature of the position of Assistant Attorney-General leads us inexorably to the conclusion that these assistants are deputies within the meaning of the Civil Service Law (§ 75, subd 1, par [b]). The Attorney-General appoints such assistants and deputies as he deems necessary. The designation of deputy in any law, contract or document shall include Assistant Attorneys-General (Executive Law, § 62). From a reading of section 63 of the Executive Law, it is apparent that the Attorney-General is invested with a broad range of powers, far too many for one person to execute. In fact, in at least three instances, a deputy is specifically mandated to act in the stead of the Attorney-General (Executive

Law, § 63, subd 2; subd 8; subd 10). The statutes thus contemplate delegation of the Attorney-General's authority.

Beyond this statutory authorization, it is apparent that every Assistant Attorney-General acts as surrogate for the Attorney-General when called upon to take a position in court, to appear for any agency of government or to litigate or dispose of any legal matter. The Assistant Attorney-General performs his duties in the name of and on behalf of the Attorney-General. He or she acts independently when making legal decisions or in deciding matters of policy. The nature of the position—the responsibilities, duties and functions—dictates that we hold that Assistant Attorneys-General are deputies of the Attorney-General for purposes of the Civil Service Law. Special Term correctly denied petitioner Hopkins a hearing under section 75.

The judgment should be affirmed, without costs.

HERLIHY, J. (concurring in part and dissenting in part). I agree with so much of the majority decision as considers the applicable case law and statutes and finds that the petitioners have failed to establish a constitutional right to a hearing as a prelude to suspension without salary pending a resolution of the criminal charges. Accordingly, I concur in the affirmance of the judgment in the De Lucia proceeding.

However, I disagree with the majority's conclusion in the Hopkins proceeding that Hopkins is a "deputy" as a matter of law within the meaning of paragraph (b) of subdivision 1 of section 75 of the Civil Service Law.

The office of Attorney-General, like the office of Governor, is created by the Constitution of this State and there is no provision therein for the position of deputy (NY Const, art V). However, section 4 of article V of the Constitution does specify that the Attorney-General is the head of the Department of Law and section 3 of the same article V gives the Legislature the power to assign new duties and functions to departments and officers.

The majority rely to a large extent on *Matter of Byrnes v Windels* (265 NY 403) which held that veterans employed as Assistant Corporation Counsel in the City of New York were "deputies" for the purpose of removal from office without a hearing. However, the quotation from *Byrnes* set forth in the majority opinion does not express the reason why the court held that they were deputies. In *Byrnes* the court reached its

conclusion upon the ground that the Charter expressly provided that Assistant Corporation Counsel could be given every power of the office of Corporation Counsel by the Corporation Counsel. That these assistants performed the general functions of attorneys at law does not warrant the generalization that all employees who act as attorneys for the State or any of its agencies are deputies of their appointing officer. Such a result would be absurd upon its face in the absence of legislation creating the office and investing assistants with full authority as if they were primary officeholders and not mere assistants (cf. *Matter of Byrnes v Windels, supra,* pp 407-409; *Matter of Behringer v Parisi,* 5 NY2d 147, 151, 154-155).

Unlike the legislative authority in the *Byrnes* case, the Attorney-General in section 62 of the Executive Law is given the authority to appoint assistants without any specification therein of the duties which he may delegate to them. While certain provisions of section 63 of the Executive Law assign specific duties to the Attorney-General and allow him to delegate those duties to an assistant or deputy, section 63 of the Executive Law does *not* contain any provision for a general delegation of duties and responsibilities to all assistants. It seems reasonably certain that an assistant does generally act on behalf of the Attorney-General. It is also common knowledge, however, that except where otherwise specifically authorized by statute, it is the name of the Attorney-General and his title which are appended to documents such as briefs in this court and the assistants do not sign in their own right.

The Attorney-General is not prohibited by law from assigning duties to his assistants which would bring them within the category of "deputy" and it does not appear that such a power would be one subject to legislative direction (as opposed to the power of the purse) since the office is created in the Constitution. Because the Legislature has created the subordinate office of Assistant Attorney-General without specifying any particular duties and the record does not dislcose that Hopkins has the *full* power of the office of Attorney-General, he has prima facie established that the respondent can only proceed in accordance with section 75 of the Civil Service Law (see *Matter of Behringer v Parisi, supra,* p 152). Accordingly, I dissent as to the proposed affirmance of the judgment in the Hopkins proceeding.

The judgment appealed from should be modified by amending the present decretal paragraph to provide that only the

petition of Laurence F. De Lucia is dismissed; and, by reinstating the petition of Joseph T. Hopkins and remitting the matter to Special Term for further proceedings.

MAHONEY, P. J., KANE and MAIN, JJ., concur with GREENBLOTT, J.; HERLIHY, J., concurs in part and dissents in part in a separate opinion.

Judgment affirmed, without costs.